IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HUBERT LEE FONTENOT,

    Petitioner,                      No. CIV S-09-1315 DAD P

    vs.

JAMES WALKER, et al.,

    Respondents.                ORDER

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner challenges the Solano County Superior Court's imposition of the upper term sentence of ten-years on a personal use of a firearm sentencing enhancement under California Penal Code § 12022.5(a)(1).[2] He seeks relief on the grounds that the trial court imposed the upper term in violation of his rights to due process and a jury trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution. Upon careful consideration of the record and the applicable law, the undersigned concludes that

---

[1] Both parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings and enter judgment in this case pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 6 & 13.)

[2] Subsequent statutory references are to the California Penal Code unless otherwise indicated.

petitioner's application for federal habeas corpus relief must be denied.

## FACTUAL BACKGROUND

I. Petitioner's Offense and Sentencing

In its unpublished opinion affirming the trial court's imposition of sentence, following a remand with directions from the California Supreme Court, the California Court of Appeal for the First Appellate District provided the following factual summary:

> The evidence at trial showed that on December 30, 2003, a gang-related altercation occurred on Phoenix Drive in Fairfield, during which Donshay Caldwell (Caldwell) knocked Cory Davis unconscious. Afterwards, Fontenot and Davis telephoned Caldwell and threatened to shoot him.
>
> The following day, Caldwell returned to Phoenix Drive, where an unidentified person informed him that someone wanted to see him at the end of the street. Fontenot, Willie McClure and Markell Davis were there, and words were exchanged. Caldwell and Fontenot began shoving each other, with Fontenot indicating that he would "beat [his] ass." Caldwell walked back towards his car, and Fontenot shot him in the arm.
>
> Caldwell told police officers that Fontenot shot him, and identified Fontenot in a photo lineup. Caldwell would not identify Fontenot as the shooter at trial.
>
> A jury convicted Fontenot of attempted voluntary manslaughter. The jury found true the allegations that Fontenot used a handgun and inflicted great bodily injury on both counts.
>
> The court sentenced Fontenot to the midterm of three years for attempted voluntary manslaughter, the aggravated term of ten years for the handgun use enhancement, and three years for the great bodily injury enhancement. On the second count, the court imposed a sentence of three years for assault with a firearm, plus ten years for the handgun use enhancement, but stayed this sentence pursuant to section 654. In imposing the upper term for the enhancement, the trial court relied on five aggravating factors: [1] "the crime involved great violence, great bodily harm, threat of great bodily harm or other action disclosing a high degree of cruelty, viciousness and callousness, (2) [Fontenot] was armed with or used a weapon at the time of the commission of the offense, (3) the victim was particularly vulnerable, [(4)] the manner in which the crime was carried out indicates planning, sophistication or professionalism . . . and [(5) Fontenot's] prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are of numerous and increasing

seriousness, and we'll leave it at that."

(Resp't's Lod. Docs., Ex. D (hereinafter, "Second Opinion") at 2.)

PROCEDURAL BACKGROUND

I. <u>First Court of Appeal Opinion</u>

On appeal from his conviction and sentence, petitioner claimed that the trial court had violated his Sixth Amendment right to a jury trial by sentencing him to the upper term on the firearm enhancement based on aggravating factors not found by a jury, as barred by the United States Supreme Court's then-recent decision in <u>Cunningham v. California</u>, 549 U.S. 270 (2007). (Resp't's Lod. Doc., Ex. F.) On June 8, 2007, the California Court of Appeal for the First Appellate District agreed and remanded the case for re-sentencing in light of the decision in <u>Cunningham</u> which held that, except for a prior conviction, any fact that increases the penalty for a crime beyond the middle term as specified by California law must be submitted to a jury. (Resp't's Lod. Doc., Ex. C (hereinafter, "First Opinion") at 1, 5.)  In doing so, the state appellate court noted that "[t]here is no dispute here that the trial court's reliance on four out of the five factors stated for imposing the upper term was error." (<u>Id</u>. at 8.)  The state appellate court determined that it need not decide whether, after <u>Cunningham</u>, "recidivist factors" relied upon in imposing upper term sentences must be found by a jury, because "on this record, the court's erroneous reliance on other aggravating factors was not harmless beyond a reasonable doubt." (<u>Id</u>. at 6-7.)

In this regard, the California Court of Appeal for the First Appellate District explained:

> While some cases have found this type of error to be harmless if the trial court indicated on the record that the recidivist factor, standing alone, would have been enough to impose the aggravated term [citation omitted], the trial court here made no such indication.  Given that the trial court expressly refused to follow the probation report's recommendation of the middle term in order to "get the attention of those in the community to lead a law-abiding safe life," it is clear that the court did not rely solely on the 'recidivist' factor to impose the upper term.  Moreover, the

3

> probation report here indicated that Fontenot's "limited" prior record and successful completion of juvenile probation were <u>mitigating</u> factors.
>
> * * *
>
> . . . Given the probation report's characterization of Fontenot's criminal history as "limited" and his term of juvenile probation as "successful," together with the notable absence of any indication by the trial court that the "recidivist" factor alone would have supported the upper term, we cannot say beyond a reasonable doubt that the trial court would have imposed the aggravated term based solely on this factor.

(<u>Id.</u> at 8-9.)

For these reasons, the California Court of Appeal affirmed petitioner's judgment of conviction but remanded the matter for re-sentencing in light of the decision in <u>Cunningham</u> and the views expressed in its first opinion. (<u>Id.</u> at 9.)

II. <u>Second Court of Appeal Opinion</u>

However, the California Supreme Court granted review of the June 8, 2007 decision and remanded the case to the California Court of Appeal for the First Appellate District with directions to vacate the June 8, 2007 opinion and reconsider it in light of the then-new decisions in <u>People v. Black</u>, 41 Cal. 4th 799 (2007) (<u>Black II</u>) and <u>People v. Sandoval</u>, 41 Cal. 4th 825 (2007). (Second Opinion at 1.)

On December 7, 2007, the state appellate court affirmed petitioner's upper term sentence. (<u>Id.</u> at 4.) In this second opinion the California Court of Appeal court explained that, under <u>Black II</u>,

> the imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as <u>one</u> legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based on the defendant's record of prior convictions . . . .
>
> Here, the trial court based its sentencing decision on five factors, one of which was that Fontenot's "prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are of numerous and increasing seriousness . . ." Under [state law], the upper term can be justified based on the trial court's determination

>that the defendant's prior convictions were numerous and of increasing seriousness, and only one legally sufficient aggravating circumstance is required. Accordingly, Fontenot's constitutional rights were not denied by imposition of the upper term on the gun enhancement based on factors relating to his recidivism.

(Second Opinion at 3-4.)

On February 20, 2008, the California Supreme Court denied petitioner's petition for review. (Am. Pet. at 4; Answer at 1.)

III. Instant Petition

This case proceeds on the amended federal habeas petition, filed May 11, 2009. (Doc. No. 2.) On August 17, 2009, respondent filed an answer. (Doc. No. 10.) On September 21, 2001, petitioner filed a traverse. (Doc. No. 11.) As noted above, the parties have consented to Magistrate Judge jurisdiction. (Doc. Nos. 6, 13.)

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

/////

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.

1  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

2  II. Petitioner's Claim

Petitioner argues that he is facing an additional six years in prison – the difference between the upper and middle terms on the firearm enhancement – based solely on the trial court's determination that his record reflects "prior convictions" of "numerous or increasing seriousness." (RT at 726.) Petitioner's criminal history consisted of a juvenile adjudication for a misdemeanor drug offense and, two years later, juvenile adjudications for a felony drug offense and two vehicle code violations. Also pending against petitioner at the time of his sentencing were misdemeanor charges of trespass, loitering, and possession for sale. Petitioner permitted these latter offense to be considered at the time of sentencing by entering a Harvey waiver.[3] See Munoz v. McDonald, No. 2:08-cv-2289 WBS JFM HC, 2010 WL 4054096 at *8 (E.D.Cal. Oct. 15, 2010) (holding that under Apprendi, the trial judge may properly consider Harvey-waived offenses along with information from probation report in imposing upper term sentence based on recidivist factors).

Before this court petitioner claims that the state trial court's imposition of an upper term sentence enhancement based on this criminal record violates his Sixth Amendment right to a jury trial, because a juvenile proceeding is not a "prior conviction" under applicable federal law. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("[O]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); United States v. Tighe, 266 F.3d 1187, 1194 (9th Cir. 2001) (non-jury juvenile adjudications do not fall under the Apprendi "prior conviction" exception).

/////

---

[3] A Harvey waiver permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted. People v. Moser, 50 Cal.App.4th 130, 132-33 (1996) (citing People v. Harvey, 25 Cal. 3d 754 (1979)).

Petitioner contends that under the Apprendi line of cases, his upper term sentence is unconstitutional and invalid absent a jury finding that his criminal record reflected numerous or increasingly serious criminal offenses. Respondent counters that the state court's imposition of the upper term sentence based on petitioner's juvenile adjudications does not, under the AEDPA standard of review, violate "clearly established" federal law as pronounced by the United States Supreme Court with respect to petitioner's Sixth Amendment claim.

The undersigned weighs the merits of these arguments below.

A. Applicable Law

A criminal defendant is entitled to a trial by jury and to have every element necessary to sustain his conviction proven by the state beyond a reasonable doubt. U.S. Const. amends. V, VI, XIV. In Apprendi the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires any fact other than a prior conviction that "increases the penalty for a crime beyond the prescribed statutory maximum" to be "submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. Thereafter, the Supreme Court held that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt any fact that increases the statutory maximum sentence, unless the fact was admitted by the defendant or was based on a prior conviction. Blakely v. Washington, 542 U.S. 296, 303-04 (2004). The Supreme Court also clarified the definition of "statutory maximum" for purposes of the constitutional rule: "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional facts." Id.

Next, in Cunningham, the Supreme Court held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper term based on facts found by the court rather than by a jury. 549 U.S. at 291. The Supreme Court also determined in Cunningham that "the middle term prescribed in

/////

California's statutes, not the upper term, is the relevant statutory maximum." Id. at 288.[4] The Ninth Circuit has subsequently held that Cunningham "did not announce a new rule of constitutional law and may be applied retroactively on collateral review." Butler v. Curry, 528 F.3d 624, 639 (9th Cir.), cert. denied, ___U.S.___, 129 S. Ct. 767 (2008).

Under California law, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term sentence. Butler, 528 F.3d at 642; Black II, 41 Cal.4th 799; People v. Osband, 13 Cal. 4th 622, 728 (1996). That is, only one aggravating factor is necessary to set the upper term as the "statutory maximum" for Apprendi and Blakely purposes as long as it is established in accordance with the constitutional requirements set forth in Blakely. Black II, 41 Cal.4th at 81. While the sentencing court may make factual findings with respect to additional aggravating circumstances, these findings, themselves, do not further raise the authorized sentence beyond the upper term. Id.

Furthermore, with respect to claims of Apprendi error, "the relevant question is not what the trial court would have done, but what it legally could have done." Butler, 528 F.3d at 648. Thus, federal courts have acknowledged that under California law, only one valid aggravating factor need be found to authorize an upper term sentence. Butler, 528 F.3d at 641; Kessee v. Mendoza-Powers, 574 F.3d 675, 676 n.1 (9th Cir. 2009); see also Moore v. Evans, No. 2:09-cv-2737-JFM (HC), 2010 WL 4290080, at *9 (E.D. Cal. Oct. 22, 2010); Armstrong v. Small, No. CV 07-1101 RGK (FMO), 2009 WL 863351, at *17 (C.D. Cal. Mar. 30, 2009). That the sentencing judge might not have imposed an upper term sentence in the absence of additional aggravating factors does not implicate the Sixth Amendment. Butler, 528 F.3d at 649. Accordingly, in this case petitioner's upper term sentence on the enhancement is not

---

[4] The California Legislature responded to the decision in Cunningham by amending California Penal Code § 1170(b) to vest sentencing courts with the discretion to impose the lower, middle or upper terms without making specific factual findings thereby making the upper term the maximum term under California law. See People v. Sandoval, 41 Cal. 4th 825, 844-52 (2007).

unconstitutional if at least one of the aggravating factors that the sentencing judge relied upon was established in a manner consistent with the Sixth Amendment.

With respect to use of juvenile adjudications as an aggravating factor in imposing sentence such as occurred here, the Ninth Circuit has held that:

> [T]he "prior conviction" exception to Apprendi's general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within Apprendi's "prior conviction" exception.

Tighe, 266 F.3d at 1194.

However, in applying the AEDPA standard of review, the rule adopted by the Ninth Circuit in Tighe is not "clearly established federal law 'as determined by the Supreme Court of the United States.'" Boyd v. Newland, 467 F.3d 1139, 1152 (9th Cir. 2006) (citing 28 U.S.C. § 2254(d)(1)). In Boyd, the Ninth Circuit recognized that the Third, Eighth, and Eleventh Circuits, as well as California courts, have held that the Apprendi "prior conviction" exception includes non-jury juvenile adjudications, which can be used to enhance a defendant's sentence. Id. (citing United States v. Burge, 407 F.3d 1183 (11th Cir. 2005), United States v. Jones, 332 F.3d 688, 696 (3d Cir. 2003), and United States v. Smalley, 294 F.3d 1030, 1033 (8th Cir. 2002)). Thus, the court in Boyd concluded,

> in the face of authority that is directly contrary to Tighe, and in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent.

467 F.3d at 1152.

B. Petitioner's Prior Record

As described above, the sentencing court's imposition of the upper term of ten years on the firearm use enhancement in this case was based on five factors, including petitioner's prior convictions and/or juvenile record. Petitioner's federal habeas petition raises

the question of whether his prior criminal record, standing alone, was a constitutionally sufficient basis for the imposition of the upper term sentence. This court will therefore address the facts underlying petitioner's claim in some detail.

Petitioner was convicted in this matter on August 3, 2005. (Resp't's Lod. Doc., Ex. A (Clerk's Transcript on Appeal, hereinafter "CT") at 410.) The prosecutor submitted a sentencing memorandum urging the trial court to impose the upper term of ten years on the firearm enhancement pursuant to California Penal Code § 12022.5. (CT at 436-38.) Listing the aggravating factors supporting such a term under Rule 4.421 of the California Rules of Court, the prosecutor argued that petitioner's crime was "incredibly violent," that petitioner "actually shot" the victim and that the victim was unarmed. (Id. at 437.) As to the final aggravating circumstance under Rule 4.421(b)(5) ("the defendant's prior performance on probation or parole was unsatisfactory"), the prosecutor noted that: "The defendant appears to have a juvenile record which should be confirmed by probation." (Id.)

Prior to petitioner's sentencing the Solano County Probation Department issued a presentence report which stated:

> According to Solano County Probation records, the defendant has a juvenile record. On April 24, 2000, the defendant admitted a misdemeanor violation of 11352 H&S [transportation or sale of a controlled substance] and his case was transferred to Contra Costa County for disposition. On May 22, 2000, wardship was declared. He subsequently sustained violations of 12500(a) VC, 16028(a) VC and a felony violation of 11359 H&S [possession of marijuana for sale] on October 23, 2002. His case was transferred to Contra Costa County for disposition, and on April 22, 2003, jurisdiction was terminated successfully.

(CT at 443.)[5] The presentence report included a copy of an edited criminal history for petitioner,

---

[5] Pursuant to this court's order of September 15, 2010, on October 26, 2010, petitioner lodged a copy of the presentence report. (CT 440-452.) Noting that the report was "a confidential document and was sealed in the state court proceedings[,]" petitioner requested that the report be lodged under seal. (Doc. No. 15.) The court granted that request. (Doc. No. 16.) Under California law, probation reports are presumed to be confidential documents containing personal information which may be disclosed only under certain circumstances. See California

11

reflecting the same juvenile record. (CT at 451.)

The presentence report also noted, under the heading "Collateral Information," that petitioner at that time had three pending misdemeanor cases in Solano County, all of which were set for pretrial conference on August 31, 2005. (CT 443.) The presentence report indicated that in two of those pending cases, "the defendant has been charged with a violation of 11352(a) H&S" and that in the third, "he has been charged with a violation of 602(o) PC."[6] (Id.)

Under "Criteria Affecting Probation," the presentence report discussed various factors affecting the decision to grant or deny probation under Rule 4.414 of the California Rules of Court. As to Rule 4.414(b)(1) ("[p]rior record of criminal conduct, whether as an adult or a juvenile, including the recency and frequency of prior crimes; and whether the prior record indicates a pattern of regular or increasingly serious criminal conduct"), the presentence report stated:

> The defendant has a prior juvenile record consisting of sustained violations of 11352(a) H&S, 125000(a) VC, 16028(a) VC, and 11359 H&S. As an adult, the defendant has no prior record. However, it is noted that he has three misdemeanor cases pending. The defendant is setting a pattern of regular and increasingly serious criminal conduct.

(CT at 444.) Similarly, listing "circumstances in aggravation" pursuant to Rule 4.421(b)(2), the

---

Penal Code § 1203.05; see also People v. Connor, 168 Cal. App. 4th 669 (2004). Reviewing the briefs filed by petitioner in this habeas action, however, the court observes that petitioner has fully described his juvenile offenses as set forth in the presentence report. (Petition (hereinafter, "Pet.") at 2-3) (citing CT 451). Because in doing nothing is disclosed regarding petitioner's criminal record that has not already been publicly disclosed by petitioner's own filings in this action and in the interest of setting forth the factual basis for the conclusions reached herein, the court will discuss petitioner's juvenile record as described in the presentence report.

[6] California Penal Code § 602(o) prohibits misdemeanor trespass, specifically: "[r]efusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession."

12

presentence report stated: "The defendant's prior record is increasing in seriousness." (Id. at 446. See also id. at 447 ("Although the defendant is youthful, he has a juvenile record and he is setting a pattern of regular and increasing serious criminal conduct.")) The presentence report stated with respect to Rule 4.414(b)(2) ("[p]rior performance on probation or parole and present probation or parole status"): "The defendant's juvenile probation was terminated as successful." (Id. at 444.) It also reported the following mitigating circumstances: defendant "has a limited prior record" and "was terminated from juvenile probation as successful." (Id. at 446.) See Rules 4.423(b)(1), (b)(6) of the California Rules of Court.

        Based on all of these factors, the probation department recommended imposition of a base term of three years for the attempted voluntary manslaughter, a four-year term for the firearm enhancement, and a three-year term for the great bodily injury enhancement, for a total aggregate principal term of ten years. (Id. at 450.)

        Petitioner's sentencing hearing was held on October 18, 2005. (Resp't's Lod. Doc., Ex. B (Reporter's Transcript on Appeal, hereinafter "RT") at 718.) At the outset of the hearing, the prosecutor moved to dismiss petitioner's three pending misdemeanor cases (in which he was charged with trespass, loitering, and possession for sale, respectively) with Harvey waivers. The court granted the motions. (RT at 719-20.)

        The trial court noted that the probation department had recommended the mid-term sentence of four years on the firearm enhancement (id. at 720), and then explained why the court was inclined to impose a harsher sentence:

> The Court having considered the entire case and being present during the trial and with what's going on with those involved in the types of activities of the defendant, including those cases that have been Harvey waivered, that if we're ever going to get the attention of these young people to not resort to such violence, I would think that a Court would almost have to impose the high-term when it comes to the actual use of a firearm . . . if we're ever going to get the attention of those in the community to lead a law-abiding safe life. And so it would appear to me that the argument of the district attorney is well-taken.

/////

(Id. at 721.)[7] The trial court ultimately concluded that "the circumstances in aggravation far outweigh those in mitigation, notwithstanding what was indicated in the probation report. I just think," and added, "that Mr. Fontenot is just the classic person that if you're found guilty, then you're going to be sentenced to the maximum amount that the Court can sentence you." (Id. at 724-725.)

Accordingly, as described above in the California Court of Appeal's factual summary, the trial court sentenced petitioner to the ten-year upper term on the firearm enhancement based on five enumerated factors, the last of which was that "the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are of numerous or of increasing seriousness, and we'll leave it at that." (Id. at 725-26.)[8] As a result, petitioner was sentenced to an aggregate term of sixteen years in state prison. (CT at 456.)

C. Discussion

The last reasoned decision on petitioner's Sixth Amendment claim is the second opinion issued by the California Court of Appeal on December 7, 2007. Therein, the state appellate court held that petitioner's upper term sentence on the firearm enhancement was properly based on a non-jury finding that petitioner's "prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are of numerous or increasing seriousness[.]" (Second Opinion at 3-4) (citing Black II, 41 Cal. 4th at 816). Unlike in its first opinion, the California Court of Appeal in its December 7, 2007 opinion did not question whether the trial court had actually based its decision to impose the upper term on petitioner's juvenile record.

---

[7] In support of his argument for imposition of the upper term, the prosecutor listed as an aggravating factor the fact that petitioner "has been involved in drug dealing. We have that from the Harvey waived cases. We can see that from his juvenile record. This is exactly the kind of crime that comes from drug dealing." (RT at 722-23.)

[8] This latter reference appears to be to Rule 4.421(b)(2) of the California Rules of Court which provides that aggravating circumstance exists where "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness."

(See First Opinion at 8-9.)  Nor did the state appellate court in its second opinion address the related issue of the trial court's stated intention in sentencing petitioner to "get the attention of those in the community to lead a law-abiding safe life."  (See id.)  Rather, in its second opinion, the California Court of Appeal took the trial court's stated reasons for imposing the sentence at face value, and determined that, while four of the five reasons underlying the imposition of the upper term were impermissible, under Black II the remaining reason given by the trial court for doing so was permissible and sufficient.  (Second Opinion at 4.)

It is this court's task to determine whether the California Court of Appeal's most recent decision was contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).  Here, the undersigned must conclude that the state appellate court did not act in a manner contrary to clearly established federal law in affirming petitioner's upper term sentence on the firearm enhancement which was in turn was based by the sentencing court in part on petitioner's juvenile record along with his Harvey-waived misdemeanor offenses.

The Ninth Circuit has squarely addressed the applicability of the decision in Tighe on federal habeas review.  See Boyd, 467 F.3d at 1152.  In Boyd, the Ninth Circuit cited the court's previous holding in Tighe that nonjury juvenile adjudications are not "prior convictions" falling within the Apprendi exception and that sentencing enhancements cannot ordinarily be based on such adjudications.  467 F.3d at 1151-52 (citing Tighe, 266 F.3d at 1194-95).  However, the court explained that for purposes of  federal habeas review under AEDPA the question is whether a state court decision is contrary to, or involved an unreasonable application of, United States Supreme Court precedent.  467 F.3d at 1152 (citing 28 U.S.C. 28 U.S.C. § 2254(d)(1)).  The court in Boyd concluded that because three other federal circuits have disagreed with the narrow interpretation of the exception adopted in Tighe and the Supreme Court has not ruled on the question of whether a juvenile record constitutes a "prior conviction" in this context, a state court decision affirming the use of a juvenile adjudication as a sentencing enhancement cannot be characterized as contrary to clearly established federal law.  Id.  The

15

holding in Boyd remains the law of the Ninth Circuit with respect to the issue presented by petitioner here. See Kessee v. Mendoza-Powers, 574 F.3d 675, 677-78 (9th Cir. 2009) (affirming reasoning in Boyd)[9]; see also Vargas v. Hedgpeth, No. Civ. S-09-1697 GEB, GGH P, 2010 WL 3521919, at *13-14 (E.D. Cal. Sept. 8, 2010) (relying on the decision in Boyd in rejecting petitioner's federal habeas claim that his sentence was unconstitutionally enhanced by juvenile adjudications.)

        The record before this court also establishes a factual basis for the sentencing court's conclusion that petitioner's "prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are of numerous and increasing seriousness[.]" (RT at 725-26.) The probation report concluded that petitioner's "prior record is increasing in seriousness" and that he was "setting a pattern of regular and increasingly serious criminal conduct." (CT at 446-47.) In the five years prior to the sentencing at issue, petitioner had been the subject of juvenile charges of misdemeanor and felony drug offenses and had charges pending against him for additional drug-related offenses which were dismissed with a Harvey waiver so that they could be considered for sentencing purposes. People v. Moser, 50 Cal.App.4th at 132-33. His most recent and serious offenses were the attempted voluntary manslaughter and assault with a firearm charges upon which he was being sentenced. In short, petitioner's record could be reasonably characterized as constituting numerous and increasingly serious "prior convictions" under Apprendi. Most importantly, in light of the decisions in Boyd and Kessee, it is apparent

---

[9] In his traverse, petitioner argues that "Kessee was an unauthorized departure from Butler" and, because one three-judge panel of the Ninth Circuit cannot overrule another such panel, "this court must therefore follow Butler." (Traverse at 3.) In Butler, the Ninth Circuit had noted that the scope of the "prior conviction" exception did not encompass juvenile adjudications "because those underlying proceedings lack full Sixth Amendment protections." 528 F.3d at 644-45 (citing Tighe, 266 F.3d at 1193-95). This statement by the court in the Butler decision is arguably dicta. More importantly, the statement is consistent with the decision in Kessee, as the latter decision explained that Tighe is not determinative of "clearly established federal law" with respect to the issue of the use of juvenile adjudications as sentencing enhancements in the context of federal habeas review under AEDPA. 574 F.3d at 677-78; see also Estrella v. Ollison, No. EDCV 06-1086 CJC (FFM), 2010 WL 2851878, at *5 n.7 (C.D. Cal. June 11, 2010).

that the decision of the California Court of Appeal for the First Appellate District affirming petitioner's sentence, despite the sentencing court's reliance on petitioner's juvenile record, was not contrary to clearly established federal law.

To be sure, as the state appellate court noted in its first opinion on appeal, the trial court made remarks suggesting that its decision to impose the upper term was influenced by factors other than petitioner's criminal record.[10]  To the extent those comments suggest that sentencing court intended to make an example of petitioner by imposing the upper term, such would not be a permissible aggravating factor under California law.  Moreover, as respondent concedes, four of the five factors cited by the sentencing court in imposing the upper term sentence on the firearm enhancement in petitioner's case were not valid under the decision in Cunningham.  (See First Opinion at 8.)  However, the Ninth Circuit has clearly held in Butler that a sentencing court need find only one valid aggravating factor to lawfully impose an upper term sentence in keeping with the requirements of the Sixth Amendment.  528 F.3d at 648-49.  Here, as in Butler,

> it is impossible to know what the trial court would have done had it only found one aggravating factor . . . .  With regard to a Sixth Amendment sentencing violation, however, the relevant question is not what the trial court would have done, but what it legally could have done.

528 F.3d at 648.  Because the sentencing court here cited and relied upon one valid legal basis - petitioner's prior record - in imposing the upper term sentence, petitioner is not entitled to federal habeas relief under the Fifth, Sixth, and Fourteenth Amendments.

/////

/////

---

[10]  As noted above, the sentencing court stated "if we're ever going to get the attention of these young people in the community not to resort to such violence, I would think that a Court would have to impose the high-term when it come to the actual use of a firearm . . . if we're ever going to get the attention of those in the community to lead a law-abiding life," the trial court stated.  (RT at 721.  See also First Opinion at 8-9.)

17

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's application for a writ of habeas corpus (Doc. No. 2) be denied.

Before petitioner can appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).  For the reasons set forth above, petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability will not be issued.

DATED: November 10, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
font1315.hc